JACOB MAJERUS, APPELLEE, V. HENRY C. BARTON, APPELLANT.

FILED DECEMBER 18, 1912.   No. 16,736.

Easements: PRESCRIPTION: ROADWAY. Where there has been an open, visible, continuous and unmolested use of a roadway across the premises of another for a period exceeding ten years, it will be presumed to be under a claim of right, and not by the license of the owner; and, where one seeks to close a way over his land which has been enjoyed by his neighbor for such period, he has the burden of showing that the use was permissive, and not under a claim of right, and, if he fails to overcome such presumption by a preponderance of the evidence, his case must fail.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*Reavis & Reavis,* for appellant.

*C. Gillespie* and *E. Falloon, contra.*

HAMER, J.

This is an appeal from a decree of the district court for Richardson county. The plaintiff, appellee, seeks to establish a roadway between his premises, the north half of the southwest quarter of section 12, in township 1, in range 16, Richardson county, Nebraska, and a public road running along the south line of the 80-acre tract adjoining on the south. The plaintiff and his grantors have owned the 80-acre tract in question for a period of about 40 years, and during that time they have traveled to and from the same along the west line of the south eighty to the public road. The right to use this roadway is claimed by prescription. A good many years ago a row of walnut trees was planted within the roadway, and about 7 or 8 feet from a hedge fence on the east side of the said roadway. About 3 years ago a wire fence was built about 6 feet west of the said row of trees. The fence and the row of trees run north and south the full length of the roadway. It is alleged in the petition that the limbs of the walnut trees grew so that they reached over the roadway and prevented the plaintiff from hauling hay and interfered with driving a covered carriage over the same, and, because of the limbs and the fence, it was almost impossible to get through, and especially when the road was wet and muddy; that the plaintiff had asked the defendant to remove his fence and to allow the trees to be trimmed and the rubbish accumulated to be taken out of the roadway, and that the defendant refused to permit this to be done; that, because of the fence and the walnut trees, the plaintiff was prevented from enjoying the free and undisturbed use of such way. The plaintiff alleged in his petition that the west 30 feet of the defendant's tract had been charged with and had become subservient to the easement of the said roadway for an uninterrupted period of 40 years; that the plaintiff and his grantors had been in the open and notorious use of said easement for that time; that the grantors of the defendant admitted that the ownership to said land covered by

said easement belonged to the plaintiff's grantors; that the plaintiff had been damaged in the premises in the sum of $50. There was a prayer for judgment for $50 and costs; that the defendant be ordered to take down the fence; that the use of the roadway of 30 feet be quieted in the plaintiff; and that the plaintiff be permitted to clear the said roadway of all obstructions.

A general demurrer to the plaintiff's petition was overruled, and the defendant answered admitting the ownership, but denied that there was an easement, and alleged that there was a strip of ground approximately 30 feet wide on the west end of the defendant's land which ran north and south leading to the public road from the plaintiff's land, and that the defendant had permitted the plaintiff to go over and upon said strip and to use the same in connection with the defendant and others as a roadway, but that the permission was a mere license granted by the defendant to the plaintiff in common with others; that the defendant was the owner of the row of walnut trees, and that he constructed and maintained a wire fence a few feet west of said trees, that no rights to the said strip had ever been granted to the plaintiff, or had inured to his benefit by prescription, or otherwise; that the plaintiff had due notice that his grantors had no right to said strip of ground, except the right given them by way of license or permission to use the same as a roadway in common with others; that the plaintiff had always recognized the ownership of the land in the defendant; that about the 7th of October, 1906, the plaintiff sought to purchase of the defendant enough of said right of way to give him a road thereon, and offered the defendant $112.50 for the same. Other allegations in the petition were denied.

There was a reply alleging said easement was the only way the plaintiff had of getting to and from the public road; that after the dispute arose plaintiff offered the defendant by way of compromise $125 for the easement; that the offer was made to avoid a lawsuit and trouble

with a neighbor; that plaintiff had always averred that he had complete title to said strip of ground by prescription; that said prescriptive right had existed in plaintiff and his grantors for more than 40 years.

The court refused defendant's application for a jury, and the case was tried to the court. There was a finding and decree 'for the plaintiff that the title of the plaintiff in the said easement be quieted, and the defendant ordered to remove the fence, and that plaintiff be granted authority to trim the walnut trees in so far as they interfered with the use and enjoyment of the easement, and that the defendant be enjoined from in any manner interfering with the easement, and pay the costs. Defendant appeals.

The principal assignment of errors would seem to be: (1) That the court erred in holding the case to be of an equitable cognizance; (2) in denying the appellant a trial by jury; (3) in finding for the appellee and rendering judgment in his favor. There is no question of the use of the way for a period varying from 35 to 40 years. There seems to be no question but what the limbs of the walnut trees are in the way and obstruct the road. The matter in controversy is whether the plaintiff has a right to the use of the roadway.

It is claimed by the appellant that the evidence shows that the use of the alleged way by Wyatt, who was the early owner of the north eighty, was with the express permission to do so by Mr. Elwell, the first owner of the said south eighty, and that Schuler, who was Elwell's grantee, exercised the same control over the south eighty that Elwell had exercised; that Barton became the owner of the south half a little over a year after the plaintiff became the owner of the north half; that Majerus undertook to buy the right of way from Schuler, and afterwards attempted the same sort of purchase of Barton when Barton became the owner of the south eighty; that Barton's deed called for just 80 acres of land, and that the deed that Majerus got from the Wyatt heirs called for just 80 acres of land, the north half of the quarter section, so that

Majerus bought no land at that point outside of the north half of the quarter section, and did not buy any land in the south half.

It would seem from the testimony of Majerus that, when he bought out the Wyatt heirs, he desired that they should sell him the strip of land on the west end of Schuler's land that had been occupied by the roadway, and which was then owned by Barton, and that the Wyatts refused. Majerus had bought the north eighty, and he also wanted to buy the road over the south eighty out to the public highway. In the brief of counsel for the appellant, they dwell upon the fact that Majerus told Barton, when talking to him about the lane, that he had offered Schuler money for the land, and that Schuler would not sell it.

Henry Wyatt testified that he was born and raised on the north eighty, and that he had lived there about 38 years, and that during that time his father and his father's family traveled through that lane to the public road; that the hedge on the east side of the lane was planted there probably 35 to 38 years before the trial, and that the walnut trees were planted about the same time; that Elwell, who owned the south eighty, had sold it to Charles Schuler about 17 years before the trial; that, when the limbs of the walnut trees grew down into the road and became obstructions to the hauling of threshing machines and loads of hay, he trimmed them; that Elwell had told him that the lane was not his (Elwell's), and to "trim the trees and throw the brush out of the way; he had nothing to do with it." He testified as if he thought that the strip was fenced off to be used as a road. He had first talked to Elwell about trimming the trees 25 years before the trial.

J. R. Messler testified that he had known the land since 1869 or 1870, and that he and McDowell went out to the lane; that the south eighty was then owned by Mr. Elwell and the north eighty by Mr. Charles Wyatt, and that a Mr. Bowers then owned the quarter west of both eighties, being the land now known as the Uhlig quarter; that

Wyatt, McDowell, Elwell, old man Bowers and some other gentlemen were out there to settle "a dispute on that road," and settled it; that they talked the thing over; that the legislature had the winter before made a law that all section lines were roads, "and on that basis they settled the road question right here" (the lane is on a section line); that McDowell was one of the arbitrators, and that the assertion was made in the presence of old man Wyatt, Charles Wyatt, old man Bowers and some other gentlemen. The witness did not know what was done about it, "only *they said it was settled.*"

Ralph Hanna testified that he had known the lane on the west end of the eighty that belonged to Barton for 35 or 40 years; that he had lived in the neighborhood 46 years; that it was 35 or 40 years since the hedge was put in; that the lane had been opened and used for 30 or 35 years. It was also shown that the improvements were on the west corner of the north eighty, that the house fronted west, and that the lane in question ran between two hedge fences, one of which was on the east side of the lane and the other on the west side.

Louis Bippes testified that he had known the lane for at least 20 years, that he had worked with Mr. Wyatt 7 or 8 years, and had been up through the lane at least a dozen times a year or more; that the lane extends from the public road to the Majerus eighty, and that there was a wire fence on the east side and a hedge fence beyond the wire fence.

Barton, defendant, testified that the lane was there when the purchase was made; that it extended up to the Majerus land and stopped there; that there were 50 walnut trees standing in the lane; that there were negotiations between Barton and Majerus for the purchase of the strip, but that the sale was not completed; that he (Barton) was willing that the walnut trees might be trimmed, only he wanted a competent man, Mr. George Chapp, to trim the trees, and was unwilling that Majerus should "potter around there." He seems to have been

afraid that the trees would be killed. He testified that he used the lane in common with Majerus; that he (Barton) trimmed the trees, mowed the weeds, and took care of the lane; he also testified that the fence had been there 3 years, and that during that time the threshing machine and loads of hay had passed up and down. Mr. Barton, on his cross-examination as to what had been said between him and Majerus concerning the settlement of the dispute, was not certain whether Majerus said that he would "rather make a settlement than have a lawsuit." He did not know whether they had talked compromise; that it was about 24 feet from the row of walnut trees to the hedge fence on the west side of the lane, and that he had left "a pass way of 20 feet as an accommodation to the neighbors." He also testified that the wire fence was west of the trees.

Thomas Davis remembered that he had seen Barton taking care of the trees, and he himself had cut the weeds when working for Barton, but he had also seen Wyatt cut limbs off the trees to get through the lane. Herbert Burke testified that he had traveled along the lane and hauled hay through it without difficulty. The testimony of Barton, Davis and Burke in part tends to establish Barton's seeming contention that the lane was free from obstruction. That Barton was willing to leave a pass way across the land for an accommodation to the neighbors suggests that he was not seriously contending that the road should be closed.

In *Smith v. Pennington* 122 Ky. 355, 8 L. R. A. n. s. 149, the way had been used 40 years. The owner of the land across which the way ran had put up gates at the boundaries of his land. After they had been there 15 years he undertook to place a fence where the gates had been. Held, that where he undertook to close the way he assumed the burden of proving that appellee's use of it was merely permissive. As he failed to prove that, the court ordered the gates restored.

In *O'Daniel v. O'Daniel,* 88 Ky. 185, 10 S. W, 638, the

question was whether the plaintiff had a pass way over the defendant's land. The court said: "At common law the long enjoyment of an easement gave the right to the easement, and the use continuing uninterrupted for 20 years or longer, when unexplained, created the presumption that the claim or use was adverse; * * * and it was not necessary to show, by positive testimony, that the appellant had claimed this use as a matter of right, and so proclaimed to his neighbors."

In *Talbott v. Thorn,* 91 Ky. 417, 16 S. W. 88, the court said: "Where the grantee of such way has used it for 15 years, the agreement may be used to rebut the idea of such use being permissive, and as establishing it as a right." In the same case the court held: "From the fact of the verbal agreement, and the user for 15 years, the presumption arises that the user was as a matter of right, and the burden is upon the vendor to rebut this presumption, and to show that the user was, notwithstanding the grant, permissive only, which the appellant has failed to do in this case; therefore, we must regard the appellee's right to the private passway as perfected by time." The principle announced in the foregoing Kentucky cases was declared by this court in *Bone v. James,* 82 Neb. 442, where the court said: "Proof of an uninterrupted use for the necessary period without evidence to explain how it began raises a presumption that it was adverse and under a claim of right, and the burden is upon the owner of the land, if he relies on such a defense, to show that it was by virtue of some license, indulgence, or agreement inconsistent with the right claimed"—citing 14 Cyc. 1196, and authorities there cited.

In *Hammond v. Zehner,* 23 Barb. (N. Y.) 473, affirmed in 21 N. Y. 118, it was said: "If a party claiming the easement shows an open and uninterrupted enjoyment for 20 years, as the defendant did here of the dam which involved the back flow of the water onto the plaintiff's land, proof must come from the other side to show that such use of the defendant's land was by license or permission, or that it was restrained or limited in point of time."

In *Pavey v. Vance,* 56 Ohio St. 162, it was said to be "a general rule that where a person uses a way in the enjoyment of his own land through the land of another, without let or hindrance, for the period of 21 years, in the absence of anything to the contrary, he thereby acquires a right by prescription to continue the use as an incident to his own land, and which will pass by a conveyance or descent of it. The fact of the use is open to explanation. It may be shown to have been permissive. But in such case the burthen is upon the owner of the land to show that the use was a permissive one." In this case it is said: "Prescription was not regarded as a source of title, but as a means of defense against the assertion of an originally superior title, one that would have prevailed but for the consideration given to long time possession."

In *Fleming v. Howard,* 150 Cal. 28, 87 Pac. 908, the court cited Washburn, Easements and Servitudes (4th ed.) 156 (*90), 14 Cyc. 1147, Jones, Easements, sec. 186, and other authorities, and said (quoting): "Where an open and uninterrupted use of an easement for a sufficient length of time to create the presumption of a grant is shown, if the other party relies on the fact that these acts or any part of them were permissive, it is incumbent on such party, by sufficient proof, to rebut such presumption of a nonappearing grant; otherwise the presumption stands as sufficient proof, and establishes the right."

In *Nowlin v. Whipple,* 120 Ind. 596, 6 L. R. A. 159, the court held that an executed parol license might become an easement upon the land of another; and that the way across the lands of another, though founded upon a permissive right, was irrevocable where expense had been incurred in perfecting the easement. The agreement had been acquiesced in for more than 30 years. The court said that a court of equity will not permit the license to be revoked.

In *Pierce v. Cloud,* 42 Pa. St. 102, 82 Am. Dec. 496, the defendant claimed a right of way over the plaintiff's land. The plaintiff forbade the defendant from going over the

land, and locked the gate, which the defendant took off its hinges, and went through and the plaintiff brought his action of trespass. Defendant proved the use of the way for 40 years, also that defendant had said to the plaintiff that plaintiff was very kind to allow him a way over the land, and had spoken of purchasing a right of way out from his place. There was a verdict for the defendant, and the court held that the owner of the land "has the burden of proving that the use of the easement was under some license, indulgence, or special contract, inconsistent with the right claimed by the other party," but said, "we do not think the owner made such proof here," and affirmed the judgment of the court below.

The easement is a right which one person has to use the land of another for a specific purpose. *Jackson v. Trullinger*, 9 Or. 393, 397.

The following authorities seem to sustain the appellee's contention: *Steffy v. Carpenter*, 37 Pa. St. 41; *Colburn v. Marsh*, 22 N. Y. Supp. 990; *Nicholls v. Wentworth*, 100 N. Y. 455; *Barnes v. Haynes*, 13 Gray (Mass.) 188, 74 Am. Dec. 629. Nor need there be an allegation that the user was adverse, where it is set forth that the plaintiff used the roadway continuously for 50 years with the knowledge and acquiescence of the owner.

The way is in a lane between two hedge fences, one of which is on the Bowers land and the other on the Barton land. Not only is the place between the hedges the right sort of place for a road, but the defendant's grantors planted a row of walnut trees, such as is usually planted to line a road. The acts of defendant's grantors were such as to indicate their intention to leave a roadway. They seem to have acquiesced in the demand of the owner of the north eighty for a road across the south eighty. It was a necessity to him, and it requires no flight of imagination to suppose that he demanded that which made it possible for him to live there in comfort. If the owner of the south eighty yielded, however slightly, to the demands of the occupant of the north eighty, and so far consented

that the occupant used the roadway until 40 years elapsed, the present owner of the south eighty has assumed a serious and difficult burden of proving that the use for all of these 40 years was merely permissive. Besides, the limbs of the overhanging trees and the weeds have been cut out of the roadway from time to time by the defendant himself, and he has kept the roadway open, assisted by the appellee. . There is testimony that the defendant left it open as an accommodation to the neighbors. He gives this testimony himself. What does he intend to establish by keeping it open if it is not a roadway? It is not to be forgotten that this lane is on a section line. Neither is it to be forgotten that the legislature did declare that section lines were to be public roads. It may be true that they are not public roads until they are opened, but it is probably a common belief that they are public roads, and there is nothing strange in the testimony of Messler, who describes the dispute that was had, and he tells how Wyatt, McDowell, Elwell, and "old man" Bowers and some other gentleman went out to that lane to settle the "dispute on that road," and he understood that they did settle it. In the meantime the years have been going by, and four times the usual period to obtain a right by prescription passed before there was an attempted halt. It is presumed, under the authorities above cited, that the right of plaintiff to use the road owes its origin to a grant from the defendant or his grantors to the plaintiff or his grantors, and the defendant is required to overcome this presumption by a preponderance of the evidence. In addition, it may be said that the district judge was close to the witnesses and to all the circumstances of the case, and that he had perhaps a better opportunity to determine the facts than we have. We see no reason to reverse his judgment.

The judgment of the district court is

AFFIRMED.

SEDGWICK, J., concurs only in the result.