Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/23/2019 09:06 AM CDT

FELICIA J. MELENDEZ, APPELLANT, V. RODNEY L. HOLLING
AND BRANDY A. HOLLING, APPELLEES.

___ N.W.2d ___

Filed April 23, 2019.    No. A-17-1201.

1. **Easements: Adverse Possession: Equity: Jurisdiction: Appeal and Error.** A suit to confirm a prescriptive easement is one grounded in the equitable jurisdiction of the district court and, on appeal, is reviewed de novo on the record, subject to the rule that where credible evidence is in conflict on material issues of fact, an appellate court will consider that the trial court observed the witnesses and accepted one version of the facts over another.

2. **Easements: Words and Phrases.** An easement is an interest in land owned by another person, consisting of the right to use or control the land, or an area above or below it, for a specific limited purpose.

3. **Easements.** A claimant may acquire an easement through prescription.

4. **Easements: Proof: Time.** A party claiming a prescriptive easement must show that its use was exclusive, adverse, under a claim of right, continuous and uninterrupted, and open and notorious for the full 10-year prescriptive period.

5. **Easements: Adverse Possession: Words and Phrases.** The word "exclusive" in reference to a prescriptive easement does not mean that there must be use only by one person, but, rather, means that the use cannot be dependent upon a similar right in others.

6. **Adverse Possession: Title: Time.** Use by predecessors in title may be tacked onto a claimant's use in order to meet the 10-year requirement for adverse possession.

7. **Easements: Adverse Possession: Proof.** In order to prove a prescriptive easement, the claimant must establish each of the elements by clear, convincing, and satisfactory evidence.

8. **Easements: Presumptions: Proof: Time.** Generally, once a claimant has shown open and notorious use over the 10-year prescriptive period,

adverseness is presumed. At that point, the landowner must present evidence showing that the use was permissive.

9. **Easements: Presumptions.** A presumption of permissiveness exists when an owner permits unenclosed and undeveloped lands to be used by neighbors.

10. ____: ____. The presumption of permissiveness applies to unenclosed wilderness but not to an unenclosed parking lot in a downtown shopping center or a driveway in a suburban neighborhood.

11. ____: ____. When the owner of a property has opened or maintained a right of way for his or her own use and the claimant's use appears to be in common with that use, a presumption of permissiveness exists.

12. ____: ____. The presumption of permissiveness may be rebutted by showing that the claimant is making the claim as of right.

Appeal from the District Court for Adams County: Stephen R. Illingworth, Judge. Affirmed.

Jeffrey P. Ensz, of Lieske, Lieske & Ensz, P.C., L.L.O., for appellant.

Richard L. Alexander, of Richard Alexander Law Office, for appellees.

Pirtle, Arterburn, and Welch, Judges.

Arterburn, Judge.

## INTRODUCTION

Felicia J. Melendez appeals from an order of the district court for Adams County that found she had failed to prove the existence of either a prescriptive easement or an implied easement across land belonging to her neighbors, Rodney L. Holling and Brandy A. Holling. Melendez argues on appeal only that the district court erred in not awarding her a prescriptive easement across the Hollings' property. Finding no merit to her argument, we affirm the order of the district court.

## BACKGROUND

Melendez owns a house located at 716 North Colorado Avenue in Hastings, Nebraska, while the Hollings own the

house located immediately to the south, at 712 North Colorado Avenue. Melendez' house contains three one-bedroom apartment-style units. The Hollings purchased the house located at 712 North Colorado Avenue with the intent to renovate and then resell it. Part of the renovation included the installation of a paved driveway running from the street, then alongside the house, and ending flush with the back of the house. A privacy fence was built around the backyard. The newly constructed driveway and privacy fence were built along the property line between the two properties.

On October 15, 2015, Melendez filed a complaint against the Hollings, asking the district court to find that a prescriptive easement existed over a portion of the Hollings' property. She alleged that a shared driveway previously existed, which was located on the southern portion of her property and the northern portion of the Hollings' property. Melendez further alleged that the shared driveway had been continuously used for a period of more than 10 years and used in an actual, open, notorious, and hostile manner. Melendez alleged in her complaint that the Hollings' new driveway and privacy fence along the property line would cause irreparable injury and damage to her by preventing her tenants from being able to access the rear of her property for purposes of parking. At trial, Melendez testified that if two panels of the privacy fence were ordered removed, her tenants would retain the ability to park their cars behind the house.

Trial was held on July 19, 2017, consisting of the testimony of the parties, two tenants who previously rented from Melendez, the prior owner of the Melendez property, and the Hastings building inspector. Numerous exhibits were also admitted into evidence.

The driveway in question sits between Melendez' apartment house and the Hollings' house. Melendez testified that the driveway between the two properties was a shared driveway with separate approaches when she purchased the property. She stated that people from both properties used the driveway.

She never asked for nor received either written or verbal permission to use the driveway from the previous owners of 712 North Colorado Avenue or the Hollings. Melendez described the driveway as narrowing as you move from the street, past the houses, and toward the back of the properties. In the backyard of Melendez' property is a small parking area where her tenants parked their cars. Melendez testified that she bought her property in 2012 from Laura Witte. Melendez testified that she never communicated with the prior owner of 712 North Colorado Avenue or the Hollings regarding use of the driveway between the houses. No permission was granted nor had there been any past denial of access to the portion of the driveway located on the 712 North Colorado Avenue side of the property line. Melendez made no improvements such as providing gravel or other resurfacing with respect to either the parking area or the driveway as it existed on her side of the property line.

Witte testified that she had owned the property at 716 North Colorado Avenue for 12 years before selling it to Melendez. While Witte owned the property, she told her tenants that they could use the shared driveway to access the back parking area on her property but that they could not park on the driveway due to its shared nature. She testified that she believed that the driveway was part of both neighboring properties and had always considered it to be a shared driveway. Witte could not recall ever asking for or receiving any type of permission from the prior owners of 712 North Colorado Avenue to drive vehicles over a portion of that property in order to access the rear of her property. She also could not ever recall being told by the prior owners that her tenants should stop using the driveway.

In August 2015, the Hollings bought the house at 712 North Colorado Avenue, intending to renovate and then resell it. Rodney Holling testified that the seller made no representations to him regarding a shared driveway. He testified that he had never given any of Melendez' tenants permission to use

the driveway nor had he told them they were prohibited from using it. Even though neither Melendez nor her tenants asked him for permission to use the preexisting driveway to access the rear of her property, he did not seek to prohibit the tenants from using the driveway until such time as the exterior improvements were made. He acknowledged that a portion of the privacy fence would have to be removed in order for cars to access the back parking area on Melendez' property. He noted that he made the exterior improvements based on his belief that most prospective buyers would prefer a private driveway over a shared driveway. He also noted that the backyard of Melendez' property consisted of "grass and weeds." Until the lawsuit was filed, he had intended to build a garage inside the privacy fence.

Melendez had the property surveyed. The surveyor's flags showed that the dirt driveway in question laid almost evenly on the Hollings' property and on Melendez' property. Based on the property survey, the Hollings installed the privacy fence on the property line in the backyard and poured the new concrete driveway flush with the property line.

Two of Melendez' tenants testified during trial. Anthony Garvin lived in an apartment at 716 North Colorado Avenue for about a year during a period of time that included the Hollings' purchase of the neighboring property and adding the new driveway and privacy fence. Garvin testified that there was no division between the properties when he first moved in and that he used the shared driveway to access the back parking area. However, he stated that he could no longer get his vehicle to the back parking area once the Hollings' privacy fence was erected. From that point on, Garvin accessed the back parking area by driving across the neighboring property to the north.

Breanna Draper lived in an apartment at 716 North Colorado Avenue both before and after the Hollings installed the new driveway and erected their privacy fence. Like Garvin, Draper testified that she also used the shared driveway to access the

parking area behind Melendez' property. However, once the Hollings' privacy fence was up, she could no longer access the backyard parking area. She testified that she did not enter the parking area from the north side as Garvin had because she did not want to drive through that neighbor's yard.

Both Garvin and Draper testified that they observed other tenants park in a small parking area directly across the street, which was in front of a daycare center. Draper testified that the daycare parking lot was often full during operating hours. Draper and Melendez also testified that one parking spot immediately to the side of the house remained available for the use of tenants.

A building inspector for the city of Hastings testified that the parking area in front of the daycare was open to the public. Street parking was prohibited on the near, or east, side of North Colorado Avenue but was allowed on the other side. He also testified that city codes required that any parking lot behind the house be paved, be graveled, or have crushed rock on it. He stated Melendez' house could have multiple apartments only if it had "legal nonconforming status."

Following trial, the district court entered an order on October 20, 2017, which held that Melendez had failed to prove that she was entitled to a prescriptive easement or an implied easement. The court found that Melendez did not have exclusive use of the driveway and that her use was permissive in nature. The court further found that Melendez had not put the Hollings on notice that she was claiming use of the driveway under right. Accordingly, the district court entered judgment on behalf of the Hollings and dismissed Melendez' complaint.

Melendez now appeals the district court's judgment.

## ASSIGNMENT OF ERROR

Melendez assigns on appeal that the district court erred in finding that she was not entitled to a prescriptive easement across a portion of 712 North Colorado Avenue, the property owned by the Hollings.

## STANDARD OF REVIEW

[1] A suit to confirm a prescriptive easement is one grounded in the equitable jurisdiction of the district court and, on appeal, is reviewed de novo on the record, subject to the rule that where credible evidence is in conflict on material issues of fact, an appellate court will consider that the trial court observed the witnesses and accepted one version of the facts over another. *K & H Hideaway v. Cheloha*, 24 Neb. App. 297, 885 N.W.2d 760 (2016).

## ANALYSIS

[2,3] The law of prescriptive easements has been called "a tangled mass of weeds," yet the core principles of the doctrine are well established in Nebraska. *Feloney v. Baye*, 283 Neb. 972, 815 N.W.2d 160 (2012). An easement is an interest in land owned by another person, consisting of the right to use or control the land, or an area above or below it, for a specific limited purpose. *Id*. Nebraska case law recognizes that a claimant may acquire an easement through prescription. *Id*. However, the law treats a claim of prescriptive right with disfavor. *Id*. The reasons are obvious—allowing a person to acquire prescriptive rights over the lands of another is a harsh result for the burdened landowner and essentially rewards a trespasser by granting a trespasser the right to use another's land without compensation. See *id*.

[4-7] A party claiming a prescriptive easement must show that its use was exclusive, adverse, under a claim of right, continuous and uninterrupted, and open and notorious for the full 10-year prescriptive period. *K & H Hideaway v. Cheloha, supra*. The word "exclusive" in reference to a prescriptive easement does not mean that there must be use only by one person, but, rather, means that the use cannot be dependent upon a similar right in others. *Id*. Use by predecessors in title may be tacked onto a claimant's use in order to meet the 10-year requirement. *Fischer v. Grinsbergs*, 198 Neb. 329, 252 N.W.2d 619 (1977). In order to prove a prescriptive easement,

the claimant must establish each of the elements by clear, convincing, and satisfactory evidence. See *K & H Hideaway v. Cheloha, supra*.

[8-10] Generally, once a claimant has shown open and notorious use over the 10-year prescriptive period, adverseness is presumed. *Feloney v. Baye, supra*. At that point, the landowner must present evidence showing that the use was permissive. *Id*. Exceptions to this general rule do exist, however. First, the Supreme Court determined in *Scoville v. Fisher*, 181 Neb. 496, 149 N.W.2d 339 (1967), that a presumption of permissiveness exists instead when an owner permits unenclosed and undeveloped lands to be used by neighbors. However, in *Feloney v. Baye, supra*, the court held that this presumption of permissiveness applies to unenclosed wilderness but not to an unenclosed parking lot in a downtown shopping center or a driveway in a suburban neighborhood. As such, this presumption does not apply in the present case. However, this finding does not end our analysis.

In *Feloney v. Baye, supra*, the court addressed a scenario wherein the plaintiff for a number of years utilized the defendant's driveway in order to turn his vehicle to enter his garage. A narrow alley separated the parties' properties, but did not leave adequate space for the plaintiff to make a sharp turn into the driveway. The defendant decided to build a retaining wall on his driveway in order to alleviate a drainage issue which made it impossible for the plaintiff to use the defendant's driveway. The plaintiff filed suit seeking the removal of the wall by way of the declaration of a prescriptive easement.

[11,12] Although the Supreme Court found that this presumption of permissive use did not apply, another exception related to permissive use did exist. The court held that when the owner of a property has opened or maintained a right of way for his or her own use and the claimant's use appears to be in common with that use, a presumption of permissiveness also exists. See *Feloney v. Baye*, 283 Neb. 972, 815 N.W.2d

160 (2012). The foundation for the presumption is the likelihood that the owner is acting neighborly as opposed to acquiescing in a tortious trespass over his land. *Id*.

> [W]hen a claimant uses a neighbor's driveway or roadway without interfering with the owner's use or the driveway itself, the use is to be presumed permissive. As noted, the law disfavors prescriptive easements. And using a neighbor's driveway to turn around in is a common act. Landowners who permit such acts out of neighborly accommodation would likely stop doing so if their continued accommodation meant that they would one day lose the power to control the development of their land. "'Such [a] rule would [lead to] a prohibition of all neighborhood accommodations in the way of travel.'"

*Id*. at 981, 815 N.W.2d at 167-68. Permissiveness is merely a presumption in instances such as this, and the presumption may be rebutted by showing that the claimant is making the claim as of right. See *id*.

In the present case, Melendez argues that the district court's reliance on the principles outlined in *Feloney v. Baye, supra*, ignored the holding of *Majerus v. Barton*, 92 Neb. 685, 139 N.W. 208 (1912). The court in *Majerus v. Barton, supra*, established that adverseness is presumed when the claimant of an easement demonstrates uninterrupted and open use for the necessary period of time without explanation of how the use began. The court in *Feloney v. Baye, supra*, reaffirmed that general rule. Although Melendez correctly states the general rule, she ignores its exceptions that have developed during the century since *Majerus v. Barton, supra*, was decided. The court in *Feloney v. Baye, supra*, merely recognized—and not for the first time—that there are factual scenarios where a presumption of permissiveness can exist. See, e.g., *Gerberding v. Schnakenberg*, 216 Neb. 200, 204, 343 N.W.2d 62, 65 (1984) ("[w]hile it is the general rule . . . that a showing the use has been open, visible, continuous, and unmolested for the prescriptive period raises a presumption that the use was under

a claim of right and not permissive, . . . the rule is not without exceptions").

Melendez demonstrated uninterrupted and open use of the shared driveway for at least 10 years, including her predecessor in title's use, meaning that adverseness would be presumed under the general rule if it applied. However, in this case, the exception to the general rule applies. A presumption of permissiveness exists, because Melendez was using the Hollings' driveway in common with the Hollings and their predecessors and without interfering with their use. Melendez herself testified that occupants of both properties drove on the shared driveway without interference from the other's use. Therefore, since Melendez presented no evidence that rebutted the presumption of permissiveness and no evidence that she had put the Hollings on notice that she was making a claim of right, she has failed to meet her burden.

Melendez used the shared driveway at issue in this case by virtue of the Hollings' neighborly accommodation. We cannot now find that the Hollings lost their power to control the development of their land because of their act of neighborly accommodation. We agree with the district court in finding that Melendez failed to ever put the Hollings on notice that she was claiming use of the shared driveway under right. Therefore, we further agree with the district court in finding that Melendez did not rebut the presumption of permissiveness and that she was not entitled to a prescriptive easement across the Hollings' property.

## CONCLUSION

The district court did not err in finding that Melendez was not entitled to a prescriptive easement across the Hollings' property. Thus, we affirm the district court's judgment.

Affirmed.