RUTH F. DUNBAR, APPELLANT AND CROSS-APPELLEE, V. JOSEPH O'BRIEN, APPELLEE AND CROSS-APPELLANT.

FILED JUNE 22, 1928. No. 26005.

*Thomas E. Dunbar* and *A. P. Moran,* for appellant.

*Paul Jessen, contra.*

Heard before. ROSE, DEAN, GOOD, THOMPSON, EBERLY and HOWELL, JJ., and PROUDFIT and REDICK, District Judges.

ROSE, J.

This is a suit in equity to abate a private nuisance and to protect an easement. Ruth F. Dunbar, plaintiff, owns a lot fronting south on First avenue in Nebraska City. Joseph O'Brien, defendant, owns the adjoining lot on the west. The west wall or the eaves of the house in which plaintiff resides with her family are on the west line of her lot. The east wall of defendant's house is perhaps eight

feet farther west. Neither party disputes the title to the lot of the other. The petition contains pleas that defendant piled old lumber and other debris close to the west wall of plaintiff's house in front of her basement windows, thus shutting out light and air, annoying her and damaging her in her property rights; that in committing the wrongs alleged defendant was prompted by malice with intent to annoy and punish plaintiff without serving any useful purpose of his own; that he maintained the nuisance described months after he was requested by plaintiff to abate it.

It is also alleged in the petition that, by prescription or adverse user for more than the statutory period of 10 years, plaintiff and her predecessors in title acquired an easement consisting of the right to enter and use a strip of ground west of her house for the purpose of washing windows, of placing and removing screens, of painting and of making needed repairs; that a fence prevents access from the rear; that defendant forbade access for any purpose and closed her front passageway by a lattice between the houses.

The relief sought by plaintiff is an injunction abating the nuisances and preventing defendant from interfering with her right to exercise her easement.

The answer of defendant contained general denials of facts relating to nuisances and easements; admitted that he erected a lattice extending from the east side of his house to his east lot line; alleged that plaintiff's basement windows were placed in the west wall of her foundation in September, 1925, and that her workmen then trespassed upon his lot, leaving thereon piles of broken rock and other rubbish which he was required to remove, and that consequently he forbade further trespassing; that any use of his lot by plaintiff or former owners of her lot was by his permission and not by the exercise of any right claimed by them.

The answer contains also a cross-petition alleging that plaintiff collects rain-water from the roof of her house and discharges it in a volume on defendant's lot, thus injuring

the foundation of his house and damaging his fruit and vegetable cave. He prays for the dismissal of plaintiff's suit and for an injunction preventing her from trespassing on his lot and from discharging rain-water thereon.

The facts pleaded by defendant were put in issue by a reply to his answer and by an answer to his cross-petition.

Upon a trial of the issues the district court denied an injunction to prevent defendant from interfering with the passage of light and air through the windows in plaintiff's basement; enjoined interference with an easement consisting of the right of plaintiff to use the strip of ground under her west eaves for the purposes of washing windows, placing and removing screens, painting and making necessary repairs; denied an injunction restraining plaintiff from discharging rain-water from the roof of her house upon defendant's lot. Plaintiff appealed and defendant took a cross-appeal.

Was plaintiff entitled to an injunction to prevent defendant from shutting off the light and air from her basement? The trial court found and the evidence showed that defendant unnecessarily piled old lumber and other debris close to the west wall of plaintiff's basement in front of her windows. The work necessary for this annoyance required defendant to move lumber and other materials from the rear of his lot to plaintiff's windows. If the pile was not intended for a continuing nuisance, the additional work of removing it was necessary and all without any benefit to himself. For several months he shut out light and air from plaintiff's basement after he was requested to remove the obstructions. He allowed the debris to remain there until after this suit was brought. The relief based on this nuisance seems to have been denied by the trial court on the ground that defendant removed the obstructions before the case was tried. The proper inference from the evidential facts is that defendant acted through malice and used his property to annoy and punish his neighbor without serving any useful or æsthetic purpose of his own. The fundamental liberty to own and control property implies the

duty of the owner to respect the equal rights of others. Contrary to a majority of former opinions of the courts the modern view, based on reason and justice, is that the owner of property is not permitted to use it for the sole purpose of inflicting malicious injury upon his neighbor. Referring to the majority rule in cases where the courts declined to interfere with malicious structures, the supreme court of Alabama said:

"The doctrine of these cases, based on the alleged right of the owner of land to use it according to his malicious fancy, and without any advantage to himself or his land, for the sole purpose of injuring his neighbor in the lawful and beneficial use of his adjoining property, has been carried to such an extent as in many cases to be justly characterized as 'odious.' And hence statutes have been passed in a number of states abrogating the principle on account of the unjust and injurious effects resulting from its enforcement. The authority of precedents, however, must often yield to the force of reason, and to the paramount demands of justice, as well as the decencies of civilized society, and the law ought to speak with a voice responsive to these demands. We have examined the decisions and the reasoning of the various courts upon this question; and, unfettered by any precedents of our own, we are led to the deliberate conclusion that the majority view, as above stated, is founded upon a vicious fallacy, and is violative of sound legal principle as well as of common justice." *Norton v. Randolph,* 176 Ala. 381, 40 L. R. A. n. s. 131.

This is in harmony with the Michigan rule, which has been stated as follows:

"A fence erected maliciously, and with no other purpose than to shut out the light and air from a neighbor's window, is a nuisance." *Flaherty v. Moran,* 81 Mich. 52, 8 L. R. A. 183.

Referring to the maxim meaning "So use your own as not to injure another's property," the supreme court of North Carolina said:

"The ancient maxim, * * * *Sic utere tuo ut alienum non lædas,* is not founded in any human statute, but in that sentiment expressed by Him who taught good will toward men, and said, 'Love thy neighbor as thyself.' Freely translated, it enjoins that every person, in, the use of his own property, should avoid injury to his neighbor as much as possible. ,No one ought to have the legal right to make a malicious use of his property for no benefit to himself, but merely to injure his fellow man. To hold otherwise makes the law an engine of oppression with which to destroy the peace and comfort of a neighbor, as well as to damage his property for no useful purpose, but solely to gratify a wicked and debasing passion." *Barger v. Barringer,* 151 N. Car. 433, 25 L. R. A. n. s. 836.

The principle applied in the cases cited was adopted by this court March 14, 1914, when the following rule was announced:

"A landowner will be enjoined from erecting a fence on his land to the great damage of his neighbor, and without any useful purpose on his part, but for the sole purpose to annoy and punish the party injured." *Bush v. Mockett,* 95 Neb. 552.

In the present instance there is nothing in the evidence to prove a justification for the creation or maintenance of the obstruction in front of plaintiff's windows. When this suit was brought plaintiff was entitled to an injunction abating the nuisance. Defendant, by his wrongful conduct, caused plaintiff to resort to the district court for equitable relief. Whether the right to an injunction was defeated by the removal of the debris depends on the good faith of defendant. He was prompted by malice in the first instance, and there is nothing in his pleadings or proof to show that he will not repeat his annoyance, if the litigation ends without any restraint upon his future conduct. On this phase of the case the circumstances disclosed by the evidence on all the issues indicate error in the order denying equitable relief.

Did plaintiff prove the existence of an easement permitting access to the west wall of her house and the use of a strip of ground for the purpose indicated?

In *Omaha & R. V. R. Co. v. Rickards*, 38 Neb. 847, the court held:

"An easement in real estate may be acquired by open notorious, peaceable, uninterrupted, adverse possession for the statutory period of ten years."

In the present case there is evidence tending to prove the following facts: Plaintiff's house was standing in its present location as early as 1898. For more than ten years continously thereafter owners or occupants of plaintiff's lot had access from the front to defendant's lot and used a narrow strip on the east side of it for the purpose of painting, and washing windows. This use was open, notorious and peaceable without permission of the owners, and after 1925 was first interrupted by defendant, who purchased his lot in 1912 and went into possession in 1913. The easement was continuously exercised by plaintiff and former owners or occupants of her house. On the contrary, there is testimony tending to prove that there was no path in the passageway claimed by plaintiff; that owners of defendant's lot did not have notice at any time that a portion of his lot was used adversely by plaintiff and former owners or occupants of her lot; that any such use was permissive, and not adverse. While the evidence on this issue is conflicting to some extent, the preponderance seems to be in favor of plaintiff, whose easement was acquired before defendant purchased his lot, and not subsequently lost. Defendant testified in effect that the husband of plaintiff requested permission for workmen to make repairs on the west side of her house, but this did not amount to an abandonment of the easement or to an admission that it had no existence. A courteous request by a neighbor for such permission, directed to the owner of the fee, did not necessarily disprove an existing right to enter without it. It is clear that the necessary use of the passageway for plaintiff's purposes would not wear a path. After the ease-

ment was legally acquired, notice of its continuous use was unnecessary. In the decree below the trial court confined the easement to the ground under the eaves. The evidence shows that step-ladders were used, and they seem to be necessary. Their use obviously requires more ground than that covered by the eaves. The width of the easement is determined by necessity, and not by convenience. The former use of a strip to the extent of three feet in width seems to be reasonable and should be protected. The easement does not give plaintiff any right to the fee or to annoy defendant or to litter or injure his lot or to enter his premises for any purpose other than to wash windows, to insert and remove screens, to paint, and to make necessary repairs. For these purposes a passageway two feet wide at the east end of the lattice constructed by defendant will be required.

In so far as the decree below denies an injunction to prevent plaintiff from discharging rain-water on defendant's lot, it seems to be correct, and to that extent is affirmed. Otherwise, the judgment of the district court is reversed and the cause remanded for the purposes of a supplemental decree conforming to the views herein expressed, the costs in both courts to be paid by defendant.

JUDGMENT ACCORDINGLY.