Dale Stubblefield et al., Appellants and Cross-Appellees, v. Lawrence Osborn et al., Appellees and Cross-Appellants.

31 N. W. 2d 547

Filed April 1, 1948. No. 32350.

*Dryden & Jensen,* for appellants and cross-appellees.

*Blackledge & Sidner,* for appellees and cross-appellants.

Heard before SIMMONS, C. J., MESSMORE, YEAGER,

CHAPPELL, and WENKE, JJ., and BARTOS and JACKSON, District Judges.

MESSMORE, J.

This is an action for an injunction to enjoin the defendants from preventing the plaintiffs from crossing over certain lands of the defendants; to adjudge and decree the plaintiffs to have a prescriptive right to enter upon the premises of the defendants; to enjoin the defendants from interfering with the plaintiffs' claimed right to the use and occupancy of certain unplatted islands in the Platte River; and to declare the plaintiffs to be the owners of such islands and to quiet title in them.

It appears from the record that on October 7, 1943, defendants Osborn acquired title, by administrator's deed, to Lot 9 in Section 27, and Lot 1 in Section 34, Township 9 North, Range 13 West, of the Sixth P. M. By referee's deed dated July 24, 1944, they acquired title to Lot 10 in Section 27. By deed dated July 31, 1944, they conveyed a one-half interest in the premises to the defendants Bateman, which deed was filed of record January 8, 1945. All of the lands hereinbefore described are situated in Buffalo County, Nebraska. Previous to the defendants acquiring title to the above-described lands, the east portion of the land was owned by one Bolton, and Lot 1 in Section 34, which is the west portion of the land, was owned by one Stearley. These lands are situated on the north bank of the Platte River, a nonnavigable stream which runs east and west.

The islands in question are all south of the lands heretofore described, and are designated in an exhibit in evidence as Islands Nos. 1, 2, and 3. These islands are approximately 500 yards south of the north bank of the Platte River. Island No. 1 was described as being approximately 75 to 100 yards in length and 20 yards in width. Island No. 2 was 30 to 40 yards west

of Island No. 1, and Island No. 3 was 50 yards south of the west point of Island No. 2.

The plaintiffs do not have a patent from the United States Government, nor any deed or other instrument in writing, purporting to convey to them any title or interest in the three islands. In 1925 or 1926, the plaintiffs went together to construct blinds on the islands for the purpose of hunting ducks. In 1926, they constructed a shack about 10 or 12 feet in width and 22 feet in length with a board floor and shingled roof on Island No. 1, and installed a pump. They fenced the west end of this island for the purpose of using live decoys. On Island No. 2 they sunk a duck-hunting box on the west point, and constructed a blind at that place. On Island No. 3 they constructed a box and a permanent blind to use when the water was so that they could take advantage of it. Later another blind was constructed on this island. These improvements on the islands were clearly visible.

At the time of the foregoing construction, the entire bed of the river was about half a mile wide with the deepest water right next to the north bank which ran along the Bolton and Stearley land. That portion of the river north of the islands went dry last. The river channel was clear over to the islands.

The manner of crossing the land now owned by the defendants was described. In 1927 or 1928, the road used was a private road that led up to the improvements on the Bolton place starting at a point right at the river bank and going in a direct line towards the dwellings of the farmstead, in a southwesterly direction. It was wide enough for a car or wagon to travel. About 50 to 80 yards east of the improvements they opened a gate and drove through a pasture, after making a trail and trimming out brush. The road through the brush ended at the fence line dividing the Stearley and Bolton lands, at the river bank. At first they used a boat to get to the blinds, and later were able to wade.

They would wade directly south, approximately 500 yards, to the blinds. This method of access to the islands continued up to the time this action was brought.

During the period of more than 20 years these plaintiffs, with certain invited guests, used the afore-described method of getting to the islands for the duck-hunting season. At certain times in the spring they would look over and repair their equipment on the islands, and on occasions three or four times each year would hold picnics on the islands. The plaintiffs left personal property in the shack at all times. On occasions when the water was low they would spear fish in what is termed the north channel, heretofore described. They were never questioned by those occupying the land as to their right to cross over it. They opened gates to get in and out of the property, which were constructed to keep the stock from getting out in the fall. At times they had conversations with the owners as to the weather, the hunting conditions, and their success in hunting. Apparently there were no other conversations with reference to the plaintiffs' claimed right of an easement across the lands. Other hunters recognized and looked upon the plaintiffs as the owners of the islands during the 20 years or more that the plaintiffs used the islands for the purpose of hunting.

It is admitted by the plaintiffs who testified that others used the facilities to cross the lands in question for the purpose of hunting practically every year, and there is no evidence of exclusive right in the plaintiffs to cross such lands. There is no evidence that taxes were paid on the islands by the plaintiffs or any other person or persons.

There is further testimony describing the channel of the river as testified to by the plaintiffs.

The first time they were notified that they could not go upon the defendants' lands was the second day of the hunting season of 1946, when they were informed

that they could not use the islands, had no right to them, and that the defendants had the right to use the islands and would deny them and all others permission to cross over their lands for the purpose of using the islands. The defendant Osborn posted "no trespassing" signs on the premises at the fence line separating the public road from the driveway that led to the improvements on defendants' farm.

One of the defendants testified that the road down to the river from the premises was just a trail through the pasture, angling through the brush with several turns, terminating at the river, and was not a well-defined road; and that he saw no signs of a road leading from the premises to that point. This testimony was rebutted to the effect that the tracks to the river from the Bolton premises were eight to ten inches deep, or from four to six inches deep; that there was not more than one path, and that the plaintiffs always used the same path in going down to the river. They cut brush each year in three places in order to make this path down to the river.

The trial court dismissed the plaintiffs' petition as to the claimed prescriptive right-of-way and easement over and across the described Lots 9 and 10, and dissolved the restraining order against the defendants insofar as any right-of-way or easement over and across the defendants' land or any part of the same was concerned. The court found that the plaintiffs' use of the lands had not been continuous, hostile, adverse, or under any claim of ownership or color of title; that such use had been seasonal, occasional, and permissive. The court found that as to the unplatted islands in the Platte River, a nonnavigable stream, adjoining the premises of the defendants described in the evidence as Islands Nos. 1, 2, and 3, the main channel of the river at that point lies between the islands and the lands of the defendants; that by reason thereof and the seasonal use and occupancy thereof by the plaintiffs, the rights of

the plaintiffs were superior to those of the defendants; and permanently enjoined the defendants, and each of them, from in any manner interfering with, prohibiting, or molesting the plaintiffs in the use and occupancy of the islands.

The plaintiffs filed a motion for new trial to set aside that portion of the trial court's judgment finding that the plaintiffs were not entitled to an easement for right-of-way across defendants' land.

The defendants filed a motion for new trial to set aside that portion of the trial court's findings and decree that were adverse to and against the defendants, alleging that the trial court was without jurisdiction to make any findings or decree in favor of the plaintiffs as to the disputed and unplatted islands in the Platte River.

Both motions for new trial were overruled. The plaintiffs appealed, and the defendants cross-appealed.

The plaintiffs contend the judgment of the trial court finding that the plaintiffs were not entitled to an easement for right-of-way across defendants' premises is contrary to the evidence and to the law.

"An easement by prescription can be acquired only by an adverse user for ten years. Such use must be open, notorious, exclusive and adverse." Onstott v. Airdale Ranch and Cattle Co., 129 Neb. 54, 260 N. W. 556. See, also, Omaha & R. V. Ry. Co. v. Rickards, 38 Neb. 847, 57 N. W. 739.

The use and enjoyment which will give title by prescription to an easement or other incorporeal right is substantially the same in quality and characteristics as the adverse possession which will give title to real estate. It must be adverse, under a claim of right, continuous and uninterrupted, open and notorious, exclusive, with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full prescriptive period. See 28 C. J. S., Easements, § 10, p. 645.

"A prescriptive right is not looked on with favor by

the law, and it is essential that all of the elements of use and enjoyment, stated above, concur in order to create an easement by prescription." 28 C. J. S., Easements, § 10, p. 645.

"A permissive use of the land of another, that is a use or license exercised in subordination to the other's claim and ownership, is not adverse and cannot give an easement by prescription no matter how long it may be continued, * * *." 28 C. J. S., Easements, § 14, p. 655.

To establish a prescriptive right to an easement, it must have been exercised under a claim of right. A use by express or implied permission or license cannot ripen into an easement by prescription. See Sachs v. Toquet, 121 Conn. 60, 183 A. 22, 103 A. L. R. 677.

In the instant case the evidence by the plaintiffs shows the original entry and use to have been permissive. The plaintiffs did not inform Bolton that they claimed a right-of-way and perpetual easement across his land. They crossed the land on occasions to go hunting, as did others. There was no claim of right or exclusive use. The most that can be said as to their crossing the lands in question is that it was permissive only, a neighborly act on the part of the owners or tenants on the land. There was no claim of ownership on the part of plaintiffs of such a nature that they openly and forcibly asserted directly against the actual owners of the land in such a manner that the owners would be required to take affirmative action against the plaintiffs.

We have analyzed the cases cited by the plaintiffs as to the presumption arising where there has been open, visible, continuous, and unmolested use of a roadway across the land of another for a period exceeding ten years, placing the burden on the defendants to show that the use was permissive and not under claim of right. If he fails to overcome such presumption by a preponderance of the evidence, his case must fall. The cases cited by the plaintiffs in such respect show affirmative participation or negative acquiescence by the

owner that placed him in a position that would make it properly necessary for him to establish the facts that the claims are inconsistent with his own acts of commission or omission.

The facts in the instant case establish that the original entry and use were permissive, and the trial court correctly so determined.

The defendants, as cross-appellants, contend that the trial court erred in finding that the main channel of the Platte River lies between the islands and the defendants' deeded land; further that the trial court erred in finding that the rights of the plaintiffs were superior to those of the defendants; and that the trial court erred in finding that a seasonal use was sufficient to support a permanent injunction.

The evidence is in preponderance that the main channel of the Platte River at the point in question is between the premises of the defendants and the islands claimed by the plaintiffs.

"Grants of land bounded upon rivers in this state carry with them the exclusive right and title of the grantees to the center or thread of the stream, unless the terms of the grant clearly denote an intention to stop at the bank or margin of the river. * * * 'The thread or center of a channel, as the term is above employed, must be the line which would give the owners on either side access to the water, whatever its stage might be, and particularly at its lowest flow.' Higgins v. Adelson, *supra*." Hardt v. Orr, 142 Neb. 460, 6 N. W. 2d 589.

On page 466 of the above-cited opinion, this court said: "The parties to this litigation are in agreement that grants of land bounded upon rivers carry with them the exclusive right and title of the grantees to the center or thread of the stream, unless the terms of the grant clearly denote an intention to stop at the bank or margin of the river. * * * In this connection, this jurisdiction is committed to the view: 'Where title to

an island in a nonnavigable stream is conveyed to a grantee by government patent, and the land so conveyed is bounded by the waters of such stream, the grantee's ownership carries with it the bed of the river to the center or thread of each surrounding channel.' Higgins v. Adelson, 131 Neb. 820, 270 N. W. 502. See, also, Wiggenhorn v. Kountz, *supra*. * * * 'In the very nature of things, the thread or center of a stream must be the line which would give to the owner upon either side access to the water, whatever its stage might be, and particularly at its lowest flow. Upon principle, therefore, it would appear that the thread of a nonnavigable river is the line of the water at its lowest stage. The weight of authority, in this state at least, upholds such contention. Halsey v. McCormick, 13 N. Y. 296; Child v. Starr, 4 Hill, 369, 380; Ex parte Jennings, 6 Cow. 518; People v. Canal Appraisers, 13 Wend. 355; Micelli v. Andrus, 16 Or. 78, 89.' We have, in effect, adopted the foregoing reasoning of the New York courts and have announced the rule applicable in this state as follows: 'The thread or center of a channel, as the term is above employed, must be the line which would give the owners on either side access to the water, whatever its stage might be, and particularly at its lowest flow.' Higgins v. Adelson, *supra*." Hardt v. Orr, *supra*.

Under the decisions in this jurisdiction, the islands in controversy cannot be claimed by the defendants and appellees, for the reason that they are to the south of that portion of the main channel of the Platte River which goes dry last and consequently, if any claim has to be made by way of riparian ownership, it would have to come from the south part of the Platte River. It is noted that the owners of the land on the opposite, or south, side of the river are not parties to this action.

Under the evidence we can make no determination of adverse ownership to the islands in the plaintiffs as against the riparian owners on the south bank of

the river because they are not made parties to this litigation. We can only determine, as did the trial judge, that by the seasonal use and occupancy of the islands by the plaintiffs, as shown by the evidence, and the other facts as heretofore set out with reference to the main channel of the Platte River at the place in question, the rights of the plaintiffs to the islands are superior to the rights of the defendants thereto.

Judgment of the district court is affirmed.

AFFIRMED.