JOHN J. JURGENSEN ET AL., APPELLANTS, V. JAMES S. AINSCOW ET AL., APPELLEES.

53 N. W. 2d 196

Filed May 9, 1952. No. 33144.

O'Sullivan & Schrempp, and David S. Lathrop, for appellants.

Burbridge & Burbridge, Schall, Robinson, Hruska & Garvey, and William Comstock, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiffs, John J. Jurgensen and Nellie C. Jurgensen, husband and wife, are the owners of Lot 15 in Block 5, Hanscom Place, an addition to the city of Omaha, Douglas County, Nebraska. They brought this action in equity in the district court for Douglas County against James S. Ainscow and Betty S. Ainscow, husband and wife, the owners of Lots 13 and 14 in Block 5 of the same addition, defendants, to enjoin the defendants from interfering with the plaintiffs' use of plaintiffs' claimed prescriptive easements over defendants' property. Trial was had to the court. The court

entered judgment finding generally in favor of the defendants, and dismissed the plaintiffs' petition at plaintiffs' costs. The court further made a finding that the evidence failed to establish that the easements claimed by the plaintiffs were acquired through adverse use, but that the evidence did show that the use of the passageways in question by the plaintiffs and their predecessors in title was permissive only and not under claim of right. The plaintiffs filed a motion for new trial which was overruled. From this order plaintiffs appeal.

For convenience we will refer to the parties as they were designated in the district court, and as occasion requires by their first or last names. In referring to the description of the real estate of the plaintiffs and the prescriptive easements involved claimed to be over defendants' land, the plaintiffs' property will be designated Lot 15, and the defendants' property Lots 13 and 14.

The record shows that plaintiffs John J. Jurgensen and his wife Nellie C. Jurgensen acquired title to Lot 15 by warranty deed on April 1, 1935. They moved into said premises either on April 3 or April 4, 1935, and have remained owners of said real estate since that time. By exhibit No. 4, a chart appearing in the record, the plaintiffs' house is located on the west end of Lot 15 facing on Thirty-first Street, and is 100 feet north of Poppleton Avenue. The plaintiffs' garage is in the northeast corner of Lot 15. At the time plaintiffs entered into possession there were driveways leading from their property to the south and to the west. The claimed easement driveways are described as follows: A strip of ground 9 feet in width running from east to west over the south 9 feet of the north 15 feet of Lot 14, which said strip and easement runs for a distance of approximately 140 feet in an east-west direction, the west end of the easement being the curb line of Thirty-first Street and the east end of the easement being a point where said easement and the driveway join a second driveway

easement, which runs north and south, more specifically described as a strip of ground running north and south over the west 6 feet of the east 9 feet of Lots 13 and 14, which said strip constitutes a driveway easement approximately 100 feet in length, the south end of said driveway easement being the north curb line of Poppleton Avenue and the north end of the said easement being the south property line of Lot 15. There were curb cut-outs to both driveways present at the time plaintiffs acquired the property, which are now in the same condition.

The plaintiff testified that he has owned an automobile during the time he has resided on Lot 15, and has used the driveways continually, both in the daytime and nighttime. He had no agreement with the owners of Lots 13 and 14 to use the property. He was told by an agent of the realty company from whom he purchased the property that these driveways could never be closed, and that he had the right to use them. He paid nothing for their use, and paid no taxes on Lots 13 and 14. Plaintiff further testified that during the period of time the plaintiffs used the driveways, from April 3, 1935, to sometime in October 1950, he put cinders and ashes on the driveways, kept the grass mowed with a mower and on occasions used a scythe, and that in the use of the driveways he used the one that was most convenient for his purposes. With respect to the north-south driveway, the plaintiff testified that it is a strip approximately 6 feet wide and is 3 feet from the east boundary line of Lots 13 and 14. It tapers or angles a little to the west from the tree line on the east property line of the lots and forms a bottleneck with the east-west driveway in a cement drive in front of the plaintiffs' garage on Lot 15. This testimony indicates that the north-south driveway is not in a straight line. This undoubtedly is due to the trees on the north-south drive and the position of the same as the testimony will show later.

The defendants became the owners of Lots 13 and 14 on May 6, 1950, and in October 1950, began construction of two six-plex apartments on Lots 13 and 14, and two-car garages to accommodate each apartment. The construction of the apartment houses was completed and they were tenanted at the time of trial. The garages were not constructed. By virtue of the construction of the garages the driveway easements claimed by the plaintiffs were blocked for ingress and egress by automobile to their premises. This was done by grading up the dirt on the east-west driveway and pushing it past the driveway to the entrance of plaintiffs' garage. Plaintiff John J. Jurgensen requested the contractor in charge of the work to open a driveway and was informed it would be open in a few days. Plaintiff Nellie C. Jurgensen made similar requests of the contractor and was informed that the driveways would be open in a few days. It appears that the plaintiffs' house is located on the west end of Lot 15 and the property then drops to a lower level, or is terraced down to the garage.

The defendant James S. Ainscow, engaged in the management department of a real estate firm, testified that at the time the lots were purchased by him and his wife they were covered with weeds and he paid an assessment to the city for cutting the weeds for that year. When he purchased the lots he saw no evidence of travel by automobile over the strip of ground 9 feet in width running from east to west over the northern portion of Lot 14. He further testified that it would have been practically impossible to travel that strip of ground on account of the weeds and an automobile body lying in a portion of the claimed easement which he had removed, and on account of a big drop-off running east toward the plaintiffs' garage; and that in the wintertime it would be slippery and hard driving because of the fall of the ground. There is a cut 6 feet in width in the curb on Thirty-first Street which is an old carriage driveway. He then identified certain trees on the

north-south driveway with reference to the eastern boundary of Lots 13 and 14. The first tree is 8 feet west of this boundary, the second tree 4 feet, the third tree 5 feet, and the fourth tree 8 feet west of the eastern boundary. These trees are about 40 feet in height. The circumference of the first tree is 3 feet, the second tree 2½ feet, the third tree 2½ feet, and the fourth tree 3 feet. He testified that it would be impossible to drive a car over that approximate territory avoiding the trees. In other words, it would only be possible to go across that line and get into the plaintiffs' garage by swerving around the trees. From the time the defendants purchased the property he was on it at least twice a month, and when the construction started he was on it several times during each day and observed no one using the driveways. He further testified that he had been acquainted with the premises for 52 years, and that the cut in the curb on the north-south driveway on Poppleton Avenue had been there for that period of time.

The witness James Ward testified that he put in a victory garden on Lots 13 and 14 in 1943 and 1944, and was present on the lots two or three times each week. He remembered that cars would drive into the east-west driveway and park, but to the best of his recollection the north-south driveway was not used while he was there.

Mrs. Ainscow corroborated her husband's testimony to the effect that it would be impossible to drive an automobile over their property to the plaintiffs' garage.

Merritt W. Kevan testified to the ownership of Lots 13 and 14 in the spring of 1947, and that he deeded the same to the defendants; that he is familiar with the property; that he was over it once a week during the time he owned it; and that he never granted permission to anyone to use the driveways and no one did during the time he owned the same. The driveway on the north was overgrown with weeds, and it would have

been impossible for any car to get through on account of the overgrowth of brush and trees which were at least 10 years old. He had been requested to cut the weeds on the driveway to the east, and there was no evidence of either driveway being used, as the weeds thereon were 5 or 6 feet high. He further testified that no cinders were placed on the driveways when he owned the lots up until May 1950; that there were some indentations in the ground which were too narrow for car tracks; and that since Ainscow purchased the property he had gone by it once every two weeks and there was no evidence of plaintiffs' garage being used.

The plaintiff John J. Jurgensen, in rebuttal, testified that he hauled six or eight loads of cinders which he placed on the driveways; that he kept the grass cut in the driveways with a mower; that the grocery boy and the trash man used the drives; that he cut the weeds every year; that he had noticed the city cutting weeds on occasions; and that he used the driveways constantly as occasion required, sometimes three or four times a day.

Plaintiff Nellie C. Jurgensen testified to a telephone conversation with Mrs. Ainscow wherein she identified herself and where she lived, and told Mrs. Ainscow that she wanted the drive cleared. She wanted to talk to Mr. Ainscow. Mrs. Ainscow testified that a woman called her one evening before dinner, identified herself, asked when they were going to clear the driveway of the obstructions, and named two individuals who had let plaintiffs use the driveway. What interest these individuals may have had in the property is not shown. This conversation was either in the latter part of May or the first part of June 1951.

The witness Anna Kuder testified that she purchased the house at 3008 Poppleton Avenue 25 years ago and has lived there for 12 years. This house is located 2 or 3 feet east of the north-south driveway. From the time she lived there up to the time the driveways were

blocked, the plaintiff always used the north-south driveway. Once in a while plaintiff went the other way, but defendants wanted to close that driveway off. The plaintiff cindered the driveway, and she knew that he did because the cinders would run onto her sidewalk and she would have to sweep them off. There never were any weeds on the driveway because the plaintiff cut them with the lawn mower. This driveway had never been closed before. The grocery boy used to deliver groceries and would drive in on Poppleton Avenue and out on Thirty-first Street. She further testified that the plaintiff shoveled snow off the driveway on occasions.

Jeanette Kevan testified that she was familiar with the lots and planned to build on them about three years ago; that she would often drive by the property; that she never noticed the plaintiff John J. Jurgensen shovel any snow at the time they owned the property; that there were no signs or markings to indicate any use of the property as a driveway; and that there were weeds and grass growing on both driveways during the time she and her husband owned the property.

There is evidence from a witness who occupied the premises in which the plaintiffs now live from 1908 to 1925. She testified that they had permission to use these premises during that period of time. However, it will be noted that this was 10 years prior to the time the plaintiffs acquired the property.

The plaintiffs assign as error (1) that the judgment and decree of the trial court are not sustained by the evidence; and (2) that there was no competent evidence before the court that the use by the plaintiffs of the easements in question was permissive in character and not under claim of right.

The use and enjoyment which will give title by prescription to an easement is substantially the same in quality and characteristics as the adverse possession which will give title to real estate. It must be adverse,

under a claim of right, continuous and uninterrupted, open and notorious, exclusive, with the knowledge and acquiescence of the owner of the servient tenement, for the full prescriptive period. See, Stubblefield v. Osborn, 149 Neb. 566, 31 N. W. 2d 547. See, also, 28 C. J. S., Easements, § 10, p. 645.

To prove a prescriptive right to an easement, all the elements of prescriptive use must be generally established by clear, convincing, and satisfactory evidence. See, 28 C. J. S., Easements, § 70, p. 743, cases cited under note 2; 19 C. J., Easements, § 197, p. 964, note 33; 17 Am. Jur., Easements, § 73, p. 982; Beckley Nat. Exch. Bank v. Lilly, 116 W. Va. 608, 182 S. E. 767, 102 A. L. R. 462.

The prevailing rule is that where a claimant has shown open, visible, continuous, and unmolested use of land for a period of time sufficient to acquire an easement by adverse user, the use will be presumed to be under a claim of right. The owner of the servient estate, in order to avoid the acquisition of the easement by prescription, has the burden of rebutting the prescription by showing the use to be permissive. See, 17 Am. Jur., Easements, § 72, p. 981, and cases cited under note 12. See, also, Majerus v. Barton, 92 Neb. 685, 139 N. W. 208; Moll v. Hagerbaumer, 98 Neb. 555, 153 N. W. 560; Dormer v. Dreith, 145 Neb. 742, 18 N. W. 2d 94; Stubblefield v. Osborn, *supra*. In the instant case there is no competent evidence appearing in the record to show the plaintiffs' use of the claimed easement was by permission of the owners of the servient estate.

It is presumed, however, that every man knows the condition and status of his land; and if anyone enters into open and notorious possession of an easement therein under a claim of right, the owner is charged with knowledge thereof. See, 17 Am. Jur., Easements, § 65, p. 976.

Acquiescence on the part of the owner which is necessary to acquisition of a prescriptive easement means pas-

sive assent or submission, quiescence, consent by silence. See, Dartnell v. Bidwell, 115 Me. 227, 98 A. 743, 5 A. L. R. 1320; Davis v. Wilkinson, 140 Va. 672, 125 S. E. 700.

If such user has been for the requisite time open, notorious, visible, uninterrupted, and undisputed under claim of right adverse to such owner, he is charged with knowledge of such user and his acquiescence in it is implied. See, 2 Thompson on Real Property, § 512, p. 94, cases under note 18, also § 510, p. 89; Hester v. Sawyers, 41 N. Mex. 497, 71 P. 2d 646, 112 A. L. R. 536.

The extent of an easement, however, is determined from the use actually made of the property during the running of the prescriptive period. It in fact determines the nature of the easement acquired. A trial court may determine the extent of an easement arising by prescription in an injunction action and restrain interference with rights found to exist by virtue of the finding so made. The servient owner of land subject to an easement may make such use of it as he sees fit, subject only to the right of the dominant owner of the easement to use it for the purposes out of which the right arose. See, Paloucek v. Adams, 153 Neb. 744, 45 N. W. 2d 895. See, also, 17 Am. Jur., Easements, § 59, p. 971; Dunbar v. O'Brien, 117 Neb. 245, 220 N. W. 278, 58 A. L. R. 1033.

Defendants in their brief contend that plaintiffs' use was not exclusive for the reason that a grocery delivery boy and a trash man used the driveways in question. The term "exclusive use," however, does not mean that no one has used the driveway except the claimant of the easement. It simply means that his right to do so does not depend upon a similar right in others. See, 17 Am. Jur., Easements, § 64, p. 976; Thompson v. Bowes, 115 Me. 6, 97 A. 1, 1 A. L. R. 1365; Annotation, 111 A. L. R. pp. 223, 224.

The evidence with reference to the plaintiffs' claimed easement by prescription east and west over the defendants' land is insufficient to meet the requirements

of proof in such respect. In view of the evidence and the afore-cited authorities we conclude the evidence is sufficient to sustain the plaintiffs' claim to an easement by prescription and adverse use over the defendants' land for a driveway running north and south to permit ingress and egress to and from their garage.

This brings us to the following proposition raised in the defendants' answer. The defendants' answer alleges in substance that their title and the title of their immediate and remote grantors was acquired by sheriff's deed dated November 16, 1944, recorded December 5, 1944; and that said deed was delivered pursuant to proceedings valid and regular in the case of County of Douglas, plaintiff, v. James E. Allen et al., in the district court of Douglas County, Nebraska. This was a tax foreclosure action. Defendants plead that the effect of the action estopped any person or persons having or claiming any interest whatsoever in and to said real estate. The defendants' answer also alleges that at the time the instant case was filed sections 77-1934 and 77-1935, R. S. Supp., 1949, were in full force and effect and plaintiffs failed to comply with said sections and also failed to comply with sections 25-2001 and 25-2008, R. S. 1943, therefore plaintiffs should be estopped and enjoined further in the instant case.

A stipulation appears in the record showing the chain of title to Lots 13 and 14, Block 5, Hanscom Place as the same appears in the office of the register of deeds, and also shows the tax foreclosure action and proceedings in connection therewith mentioned in the defendants' answer. The plaintiffs stated they would object to the materiality of the stipulation in the event it would be claimed the tax foreclosure proceedings were binding on them. It was agreed by defendants' counsel that the stipulation reflected only what the abstract shows with reference to the title; no legal conclusion to be drawn therefrom. To set out the stipulation would unnecessarily lengthen this opinion.

Basically, the question is whether or not service was had on these resident plaintiffs by publication, as provided for by law. The sections of the statute with reference to this kind of service were not pleaded by the defendants in their answer and do not appear in the record.

Sections 25-321 and 25-517, R. R. S. 1943, and section 25-518, R. S. Supp., 1949, define the manner in which service by publication may be had on resident defendants whose names are unknown and whose place of residence cannot be ascertained by diligent investigation, and who claim or might claim a right, title, or interest in and to the real estate involved.

We make reference to that part of section 25-321, R. R. S. 1943, as follows: "Judgments and decrees against persons so designated and made defendants and served by publication as herein provided shall be conclusive as against all persons *who are not in actual possession of such property* and whose ownership of, interest in, rights or title to, or lien upon such property does not appear of record in or by their respective names in the county wherein such property is situated." (Emphasis supplied.)

It appears from the record that the plaintiffs were in actual possession of the easement in question running north and south over the defendants' land prior to and at the time of the tax foreclosure proceedings. For actual possession, no particular act is required. What is sufficient to meet the requirements depends upon the character of the land and all of the circumstances of the case. See, Hallowell v. Borchers, 150 Neb. 322, 34 N. W. 2d 404. The plaintiffs' use of the east portion of the defendants' land as a driveway north and south to permit ingress and egress to their garage for the full prescriptive period of time was visible, and it is apparent the plaintiffs intended to appropriate such portion of the defendants' land to that useful purpose.

In Cutting v. Patterson, 82 Minn. 375, 85 N. W. 172, it was said that actual possession means possession in

fact, effected by actual entry upon the premises and actual occupancy. As used in the statute the word "actual" is in opposition to the word "virtual" or "constructive," and calls for an open, visible occupancy.

In Wallace v. Sache, 106 Minn. 123, 118 N. W. 360, the court said: "The cases in which the exact meaning of the term 'actual possession' is considered are to be found principally in the law of adverse possession. * * * 'Actual possession' is a tangible fact. 'Actual possession' means the corporeal detention of the property when used in relation to adverse possession." See, also, Carey v. Cagney, 109 La. 77, 33 So. 89; Churchill v. Onderdonk, 59 N. Y. 134; Cleveland v. Crawford, 7 Hun 616; Newcome v. Crews, 98 Ky. 339, 32 S. W. 947; Lillianskyoldt v. Goss, 2 Utah 292; Moulton v. Sidle, 52 F. 616; Green v. Cumberland Coal & Coke Co., 110 Tenn. 35, 72 S. W. 459; 2 Words and Phrases (Perm. Ed.), p. 295; Hallowell v. Borchers, *supra*.

In the light of the afore-cited authorities defining actual possession as it applies to adverse possession, we conclude that the plaintiffs were in actual possession of an easement by prescription running north and south over the defendants' land as contended for by them. Therefore, any judgment or decree that may have been rendered against the plaintiffs as defendants in the tax foreclosure proceedings by virtue of service by publication, if such be the fact, would in no event be conclusive as against these plaintiffs.

The sections of the statute heretofore mentioned as appearing in the defendants' answer, wherein it is alleged the plaintiffs failed to comply therewith, are not applicable to the instant case, nor is the authority cited in defendants' brief on the same proposition applicable.

We conclude that the plaintiffs are entitled to a driveway easement running north and south over the west 6 feet of the east 9 feet of Lots 13 and 14 of the defendants' property, 100 feet in length, as shown by the evidence, to permit ingress and egress to and from the

plaintiffs' garage. The judgment of the trial court is reversed and the cause remanded with directions to the trial court to enter judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.