VIOLA M. FISCHER, APPELLANT, V. VOLDEMARS GRINSBERGS ET AL., APPELLEES.

252 N. W. 2d 619

Filed April 20, 1977. No. 40881.

Robert D. Zimmerman and James L. Haszard, for appellant.

Joseph H. Badami of Dean, Badami & Radke, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

This is an appeal from a District Court judgment dismissing a petition which prayed for injunctive relief on the basis of an alleged acquisition of a prescriptive easement for the purpose of access to a garage, over a driveway located along and on both sides of the property line between two adjacent lots of land in Lincoln, Nebraska. We reverse and remand with directions to grant the injunctive relief requested.

On June 5, 1975, Viola M. Fischer, plaintiff and appellant herein, filed a petition in the District Court for Lancaster County, alleging that she had acquired

a prescriptive easement over part of a driveway located on the property of the defendants and appellants, Valdemars and Parsala Grinsbergs. The petition alleged that plaintiff and defendants owned adjoining lots of land in Lincoln, Nebraska; that a driveway runs parallel to the boundary line between the two lots, and is situated on both sides of that boundary; that plaintiff has acquired a prescriptive easement over the driveway for the purpose of access to her garage by virtue of adverse possession; and that the defendants had interfered with plaintiff's use of the driveway. The petition prayed that defendants be enjoined from interfering with plaintiff's use of the driveway. For answer, defendants generally denied all allegations of the petition other than the fact that they were owners of one of the lots in question.

The evidence adduced at trial was as follows. The plaintiff appellant is the owner of a lot of land, hereinafter referred to as "Lot 25," located at 2007 South 16th Street in Lincoln. The defendants own an adjoining lot, described as "Lot 26," which lies to the south of Lot 25. Deeds on both lots reflecting current and prior ownership were entered into evidence, and show the following chain of ownership: With reference to Lot 25, now owned by the plaintiff, the deeds and evidence reveal that one Coralie S. Wilterdink deeded that lot to Benjamin H. McConnel and wife in 1942; and that in 1949, McConnel deeded an interest in the lot to his daughter, Marjorie H. Corr. Ten years later, in 1959, the McConnels and the Corrs deeded the lot to Roy and Bertha Graham, who were the parents of the plaintiff. Subsequent thereto, in 1970, Roy Graham, his wife having died in the interim, deeded the lot to his daughter, the plaintiff herein, who has owned it continuously since that time. With reference to Lot 26, owned by the defendants in this action, which lot lies to the south of Lot 25, owned by the plaintiff, it appears that in 1945,

the property was deeded by Maude Young and her husband to Paul C. Baldwin and his wife, who in 1952 deeded the lot to Michael L. and Helen M. Starita. In 1954, the Staritas deeded the lot to the defendants, who have owned it continuously since that time.

It appears from the record that prior to 1945 a cinder driveway ran along and on both sides of the property line between Lots 25 and 26. There is, however, no evidence as to how and under what circumstances this cinder driveway was originally constructed. The driveway ran from South 16th Street toward the back of the lots, and then branched in a "Y" shape toward garages located on each lot. In 1945, the driveway was made into a concrete driveway. The owners of the lots in 1945, Benjamin McConnel and Paul Baldwin, both worked on the new concrete driveway, and each paid one-half of the costs. Subsequent to 1945, until at least 1972, the owners and/or tenants of Lots 25 and 26 both used the driveway as a means of access to their respective garages without any controversy. It is undisputed that the owners or tenants of Lot 25 frequently and openly used the driveway, helped repair it, and helped scoop snow from it in winter months. It is also undisputed that, to the knowledge of the parties and witnesses, no written agreement in regard to the driveway ever existed between the current or prior owners of the lots.

In 1972 an attorney for the defendants wrote the plaintiff, stating that the plaintiff could no longer use the driveway. Apparently there had been a survey of the lots in 1972, which showed that 6 or 7 feet of the driveway were on the property of the defendants; and that 2 to 3 feet of it were on plaintiff's property. No action resulted from the letter written in 1972, and the plaintiff or her tenants continued to use the driveway as a means of access to her garage.

In 1975 the defendants tore up the part of the drive-

way on their property, and replaced it with new concrete. In so doing, a small portion of the old cement on plaintiff's property was destroyed, but most of it remained intact. The defendants then built a barrier or fence on the property line, effectively preventing plaintiff from using the driveway as a mean of access to her garage. Photographs admitted into evidence indicate that plaintiff's house is located so near the property line that it is impossible for her to build a driveway which would lie entirely on her property and be wide enough to permit passage of an automobile to her garage. The evidence does not show the reason for the defendants' decision to prevent plaintiff from using the driveway.

With regard to the issue of whether the defendants or previous owners of Lot 26 had ever given owners of Lot 25 permission to use their part of the driveway, there was no evidence that express permission had ever been given. Leonard Corr, who had an interest in Lot 25 from 1949 to 1959, stated that he had no real knowledge of whether Paul Baldwin, who owned Lot 26 from 1945 to 1952, ever gave the owners of Lot 25 permission to use his part of the driveway. Corr had never discussed the matter with the defendants, who became owners of Lot 26 in 1954. Corr stated that he "assumed" that the owners of Lot 26 granted permission to use their part of the driveway, but had no knowledge of this fact.

Edwin V. Fischer, plaintiff's husband, stated that he "assumed," on the basis of defendants' "inaction" on the matter, that they had given permission to use the driveway; but he clarified this statement by stating unequivocally that to his knowledge the defendants had never given him or anyone else permission to use the driveway. The defendant, Mr. Grinsbergs, gave no testimony whatsoever on the issue of permission. He stated that no written agreement existed in regard to the driveway, and that he had received no explanation in regard to it when he

acquired Lot 26 in 1954. He stated that Leonard Corr, previous owner of Lot 25, had told him that the driveway was on the Grinsbergs' property. Mr. Grinsbergs stated that he had never requested that plaintiff or her tenants not use the driveway.

Finally, although Mr. Grinsbergs stated that there is an opening at the back of plaintiff's garage such that a car can be driven in and out of the garage from an alley, plaintiff testified there is no opening in the back of her garage.

Following the submission of briefs in the case, the trial court entered judgment in favor of the defendants on April 28, 1976, and made the following findings: (1) That the use of the driveway was a permissive use, (2) that there was not an agreement made between the parties or the prior owners of the real estate in question which would constitute an agreement sufficient to constitute an easement, and (3) the evidence was insufficient to establish a location for the easement claimed by the plaintiff. In accordance with these findings, the trial court dismissed plaintiff's petition. Plaintiff's motion for new trial was overruled, and she has now appealed to this court.

In her assignments of error, the plaintiff contends that the foregoing findings and judgment of the District Court are not sustained by the evidence and are contrary to law.

The general rules applicable to prescriptive easements are well settled in this state, and are set forth in Jurgensen v. Ainscow, 155 Neb. 701, 53 N. W. 2d 196 (1952) as follows: "The use and enjoyment which will give title by prescription to an easement is substantially the same in quality and characteristics as the adverse possession which will give title to real estate. It must be adverse, under a claim of right, continuous and uninterrupted, open and notorious, exclusive, and with the knowledge and acquiescence of the owner of the servient tenement,

for the full prescriptive period. See, Stubblefield v. Osborn, 149 Neb. 566, 31 N. W. 2d 547. See, also, 28 C. J. S. Easements, § 10, p. 645.

"To prove a prescriptive right to an easement, all the elements of prescriptive use must be generally established by clear, convincing, and satisfactory evidence. See, 28 C. J. S. Easements, § 70, p. 743, cases cited under note 2; 19 C. J. Easements, § 197, p. 964, note 33; 17 Am. Jur., Easements, § 73, p. 982; Beckley Nat. Exch. Bank v. Lilly, 116 W. Va. 608, 182 S. E. 767, 102 A. L. R. 462.

"The prevailing rule is that where a claimant has shown open, visible, continuous, and unmolested use of land for a period of time sufficient to acquire an easement by adverse user, the use will be presumed to be under a claim of right. The owner of the servient estate, in order to avoid the acquisition of the easement by prescription, has the burden of rebutting the prescription by showing the use to be permissive. See, 17 Am. Jur., Easements, § 72, p. 981, and cases cited under note 12. See, also, Majerus v. Barton, 92 Neb. 685, 139 N. W. 208; Moll v. Hagerbaumer, 98 Neb. 555, 153 N. W. 560; Dormer v. Dreith, 145 Neb. 742, 18 N. W. 2d 94; Stubblefield v. Osborn, supra." See, also, Mehling v. Deines, 191 Neb. 287, 214 N. W. 2d 627 (1974); Dunnick v. Stockgrowers Bank of Marmouth, 191 Neb. 370, 215 N. W. 2d 93 (1974); Pierce v. Rabe, 177 Neb. 745, 131 N. W. 2d 183 (1964); State ex rel. Game, Forestation & Parks Commission v. Hull, 168 Neb. 805, 97 N. W. 2d 535 (1959); Hopkins v. Hill, 160 Neb. 29, 68 N. W. 2d 678 (1955).

It is also established law that a permissive use is not adverse, and cannot ripen into an easement. Messersmith v. Klein, 189 Neb. 471, 203 N. W. 2d 443 (1973); Connot v. Bowden, 189 Neb. 97, 200 N. W. 2d 126 (1972).

There is no question under the evidence in this case that plaintiff's use of the driveway was continu-

ous, uninterrupted, and open and notorious for a period exceeding 10 years. The evidence was undisputed that plaintiff or her predecessors openly used the driveway without interruption from at least 1945 to 1975. Use of predecessors in title may be tacked on to plaintiff's use to meet the 10-year requirement. See 25 Am. Jur. 2d, Easements and Licenses, § 58, p. 467. Plaintiff's use also was "exclusive" under the meaning of that word as applied in cases involving prescriptive easements. See, Jurgensen v. Ainscow, *supra;* Scoville v. Fisher, 181 Neb. 496, 149 N. W. 2d 339 (1967). Acquiescence and knowledge of the defendants were also established under the test set forth in Jurgensen v. Ainscow, *supra,* as acquiescence means "passive assent or submission, quiescence, consent by silence," and the owner is charged with the knowledge when the claimant's use has been open, notorious, visible, uninterrupted, and undisputed.

The primary question remaining, therefore, is whether plaintiff's use was adverse and under a claim of right, since the other requirements of establishing a prescriptive easement have been met. Nebraska law is clear and well established that where "the evidence establishes the open, visible, continuous, and unmolested use of the land for a period of time sufficient to acquire an easement by adverse user, the use will be presumed to be under a claim of right. In such a case the owners of the servient estate, in order to avoid the acquisition of an easement by prescription, have the burden of rebutting the prescriptive right by showing that the use was permissive." Smith v. Bixby, 196 Neb. 235, 242 N. W. 2d 115 (1976). The presumption of adversity and claim of right which exists when there has been open, visible, continuous, and unmolested use for the prescriptive period of 10 years is well established in a long line of Nebraska cases. See, Dunnick v. Stockgrowers Bank of Marmouth, *supra;* Pierce v. Rabe, *su-*

*pra;* Martin v. Norris Public Power Dist., 175 Neb. 815, 124 N. W. 2d 221 (1963); State ex rel. Game, Forestation & Parks Commission v. Hull, *supra;* Hopkins v. Hill, *supra;* Jurgensen v. Ainscow, *supra.* As long ago as 1912, this court stated in Majerus v. Barton, 92 Neb. 685, 139 N. W. 208 (1912), that if a person proves uninterrupted and open use for the necessary period without evidence to explain how the use began, the presumption is raised that the use is adverse and under claim of right, and the burden is on the owner of the land to show that the use was by license, agreement, or permission. The presumption of adverse use and claim of right, when applicable, prevails unless it is overcome by a preponderance of the evidence. Butts v. Hale, 157 Neb. 334, 59 N. W. 2d 583 (1953); Jurgensen v. Ainscow, *supra.*

Plaintiff relies on the above cases and contends in her brief that the presumption of adverse use and claim of right is applicable in this case, and that the defendants did not overcome this presumption by a preponderance of the evidence. The defendants contend that the presumption is not applicable in this case, and argue that the trial court was correct in finding that plaintiff's use of the driveway was permissive.

The defendants rely on three cases: Bone v. James, 82 Neb. 442, 118 N. W. 83 (1908); Stubblefield v. Osborn, 149 Neb. 566, 31 N. W. 2d 547 (1948); and Scoville v. Fisher, 181 Neb. 496, 149 N. W. 2d 339 (1967). In Bone, the claimant of the easement admitted that he used the land by permission of the owner, and the court appropriately found that no prescriptive easement was acquired when the use was permissive.

In Stubblefield, the plaintiff sought to establish an easement over the defendant's land for the purpose of hunting. The court stated: "In the instant case the evidence by the plaintiffs shows the original en-

try and use to have been permissive. The plaintiffs did not inform Bolton that they claimed a right-of-way and perpetual easement across his land. They crossed the land on occasions to go hunting, as did others. There was no claim of right or exclusive use. The most that can be said as to their crossing the lands in question is that it was permissive only, a neighborly act on the part of the owners or tenants on the land.''

In Scoville, the plaintiff sought to establish an easement over the town lot of the defendant. The lot was unenclosed and unimproved, and was used by the public generally for parking and other purposes. The evidence showed that the original use of the lot was permissive, and the court held that ''when an owner permits his unenclosed and unimproved land to be used by the public, or by his neighbors generally, a user thereof by a neighboring landowner, and others, however frequent, will be presumed to be permissive and not adverse in the absence of any attendant circumstances indicative of the contrary.'' The court noted the general rule that a presumption of adversity arises when there has been open, visible, continuous, and unmolested use for the prescriptive period, but stated that this general rule must be interpreted in the light of the facts of each case. The court stated: ''Here we have unenclosed land with no defined pathway across it and where, paraphrasing Stubblefield v. Osborn, supra, the most that can be said of the plaintiff, the public, and the many other various users of the whole area was that their use was permissive only, a neighborly act on the part of the owners or tenants on the land. Applicable here is what this court said in Burk v. Diers, 102 Neb. 721, 169 N. W. 263, as follows: 'Oftentimes farmers or owners of city lots, out of mere generosity and neighborly feeling, permit a way over their land to be used, when the entire community knows that the use is permissive only, without thought of

dedication or adverse user. This use ought not to deprive the owner of his property, however long continued. Such rule would be a prohibition of all neighborhood accommodations in the way of travel.'

"We think the proper rule applicable to the facts in this case is well stated in 4 Tiffany, Law of Real Property (3d ed.), § 1196a, p. 565, as follows: 'While ordinarily, as above stated, the user of another's land is presumed to be adverse, such a presumption does not exist, it seems, in the case of unenclosed land, or, as it may be otherwise expressed, evidence that the land is unenclosed is sufficient to rebut the presumption. And it has been decided that when one throws his land open to the use of the public, or of his neighbors generally a user thereof by a neighboring landowner, however frequent, will be presumed to be permissive and not adverse, in the absence of any attendant circumstances indicative of the contrary.' ''

A review of Stubblefield and Scoville indicates that those cases present different and distinguishable factual situations from the one presented in the present case. It would appear that the cases cited earlier in which the presumption of adversity and claim of right was applied, control in this case. The defendants' claim that the presumption does not apply in this case is not supported by the case law.

If we apply the presumption of adverse holding referred to, the evidence clearly does not sustain the trial court's finding that plaintiff's use of the driveway was a permissive use. Defendants, in their brief, do not contend that the presumption was rebutted, but argue that the presumption should not apply. There was no evidence whatsoever that the defendants, or their predecessors in title, gave permission to use the part of the driveway on their land. Defendant Grinsbergs, in his own testimony, said nothing at all about granting permission. Our conclusion is that the defendants failed to overcome the

presumption referred to by a preponderance of the evidence.

A second issue raised by the parties is whether the mutual use of a driveway by adjoining landowners can ripen into a prescriptive easement. Defendants claim it cannot, relying on two Michigan cases, Wilkinson v. Hutzel, 142 Mich. 674, 106 N. W. 207 (1906); and Hopkins v. Parker, 296 Mich. 375, 296 N. W. 294 (1941). Hopkins is clearly distinguishable on the facts from the present case, and the court found that the use by the claimant was permissive at inception, and therefore not adverse.

Wilkinson, however, does generally support the defendants' position. In that case predecessors of the parties had established a private right-of-way between two adjoining lots of land for the mutual convenience of both landowners. Both owners used the way for more than 30 years, until one owner blocked the way. The court found that from the beginning there was an accommodation agreement between the parties for their mutual convenience, and that there was no hostile and adverse use by either owner as against the other. The court stated that the way was based on a license which was revocable at any time by either party.

The Wilkinson case, however, represents a minority position, and must be read in conjunction with a later Nebraska decision, Jensen v. Showalter, 79 Neb. 544, 113 N. W. 202 (1907). In Jensen neighboring landowners established an alley along the boundary between their properties, each contributing 6 feet of land. The alley was used continuously by both landowners until one blocked it with a fence built along the division line. There was no written agreement in regard to the alley, and no easement by deed was involved. The court first noted the following rule: "The defendant claims that the agreement between the parties was a mere license, one to the other, to use their respective share of the lots in

question for an alley for their mutual convenience, and that such license is revokable by either one at their pleasure. The rule is well established that, where one enjoys a right of way under a claim of right, the owner of the land has the burden of proving that the use of the easement was under some license, indulgence, or special contract inconsistent with the right claimed by the other party.'' Reviewing numerous cases from other jurisdictions, the court concluded that an agreement of the kind involved in the case gave to the parties a prescriptive right in the alley. The court specifically found the Wilkinson case to be inapplicable. See 79 Neb. at p. 548. Plaintiff relies on the Jensen case, pointing out that the evidence showed that the owners of Lots 25 and 26 agreed in 1945 to construct a driveway, and each paid for one-half of the cost.

It should be noted that the Wilkinson and Hopkins cases relied upon by defendants are both Michigan cases. In an annotation entitled ''Rights derived from use by adjoining land owners for driveway, or other common purpose, of a strip of land lying over and along their boundary,'' 27 A. L. R. 2d 332, at p. 351, it is stated: ''In a minority of instances in which no oral agreement as foundation of the common use was directly shown (although, of course, the existence of some sort of understanding is usually inferable from the circumstances), the use was regarded as permissive only so as not to give rise to a prescriptive right in either owner as against the other. The Michigan cases it should be noted, disclose a pronounced leaning against the claim of adverse use in common driveway cases, and elsewhere some tendency in the same direction has occasionally appeared — compare the cases infra, § 8.''

The following statement in 28 C. J. S., Easements, § 18 (j), p. 673, should also be noted: ''As stated in Corpus Juris, which has been cited and quoted with

approval, while there are some decisions to the contrary, the weight of authority is to the effect that, where adjoining proprietors lay out a way or alley between their lands, each devoting a part of his own land to that purpose, and the way or alley is used for the prescriptive period by the respective owners or their successors in title, neither can obstruct or close the part which is on his own land; and in these circumstances the mutual use of the whole of the way or alley will be considered adverse to a separate and exclusive use by either party. However, where the owners of land used an alleyway for their mutual convenience, the user being occasional, permissive, and for broken periods of time, no right of way in the alley was established by prescription.''

In 25 Am. Jur. 2d, Easements and Licenses, § 45, p. 456, it is stated: ''In the case of a private way or alley lying over and along the boundary between lots or tracts of land that has been used without interruption by the adjoining owners for the full prescriptive period for a common purpose, the user of each owner is generally regarded as adverse to the other so as to establish an easement by prescription and either owner against the other. There is, however, some authority to the contrary.''

Two cases from other jurisdictions are particularly relevant and worthy of note as their facts are substantially the same as those present in the instant case. In each of those cases the court found that an easement existed and that a presumption arose that the use of a driveway on a boundary line was adverse, when the use was continuous, uninterrupted, and with knowlege and acquiescence of the owner. See, Czebiniak v. Woloszyn, 159 N. Y. S. 2d 632 (1956), affirmed, 5 App. Div. 2d 807, 170 N. Y. S. 2d 1023 (1958); Causey v. Lanigan, 208 Va. 587, 159 S. E. 2d 655 (1968). It appears that the overwhelming weight of authority favors the plaintiff's position that her use of the driveway was not permissive, and

we conclude that the trial court erred in holding that her use of the driveway was permissive.

The second finding of the trial court, that there was not an agreement between the parties or prior owners which would constitute an agreement sufficient to constitute an easement, need not be considered and is immaterial in light of our conclusion as heretofore discussed.

The final finding of the trial court was that the evidence was insufficient to establish a location for the easements by the plaintiff. We believe this finding to be erroneous. It is true that a claimed easement must not be such that the extent of the claim is too indefinite for a determinate description. See Harvat v. Clear Creek Drainage Dist., 197 Neb. 352, 249 N. W. 2d 209 (1977). In the present case, however, deeds covering the lots in question were admitted into evidence, and the testimony was undisputed that the driveway extended approximately 6 feet on the defendants' land and 3 feet on plaintiff's land. Photographs showed the location of the driveway in relation to the houses and garages on the lots. We do not believe that a more precise description of the claimed easement is necessary to afford injunctive relief, especially since the driveway to the garages has existed for years. The extent of an easement is determined from the use actually made of the property during the running of the prescriptive period. Jurgensen v. Ainscow, *supra;* Hopkins v. Hill, *supra.* In this case it is clear the easement would be limited to the width of the driveway as is reasonably necessary for access to plaintiff's garage. See Smith v. Bixby, *supra.*

We conclude, therefore, that the presumption of adversity and claim of right applies in this case, and the defendants did not rebut that presumption, although it was their burden to do so. It is clear that plaintiff is entitled to a prescriptive easement under the facts of this case, and the evidence appears suffi-

cient to establish a location for the easement claimed. This being an equity action, review by this court is de novo. Satterfield v. Dunne, 180 Neb. 274, 142 N. W. 2d 345 (1966). In a de novo review this court can reach its own conclusions on the facts as well as the law, and it is not limited to ascertaining whether the trial court abused its discretion.

The judgment must be reversed and the cause remanded with directions to grant the injunctive relief requested by plaintiff.

REVERSED AND REMANDED WITH DIRECTIONS.